



## MEMORANDUM OPINION

No. 04-09-00304-CR

Stephen **CENTENO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 250544
Honorable Monica E. Guerrero, Judge Presiding

Opinion by:   Catherine Stone, Chief Justice

Sitting:   Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebecca Simmons, Justice

Delivered and Filed:  June 2, 2010

AFFIRMED

Stephen Centeno was convicted by a jury of assault bodily injury.  On appeal, Centeno contends the trial court erred by: (1) denying his motion for a speedy trial; (2) failing to *sua sponte* grant a mistrial after the State elicited testimony regarding Centeno's post-arrest silence; and (3) overruling an objection to the State's closing argument.  We affirm the trial court's judgment.

**SPEEDY TRIAL**

In his first issue, Centeno contends the trial court erred in denying his motion to dismiss for lack of a speedy trial. Courts must balance four factors, commonly referred to as the "*Barker*" factors, when analyzing the grant or denial of a speedy trial claim. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). These factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530; *Johnson*, 954 S.W.2d at 771. No single factor is necessary or sufficient to establish a violation of the right to a speedy trial; rather, they are related factors and must be considered together. *Barker*, 407 U.S. at 533. In conducting this balancing test, "the conduct of both the prosecution and the defendant are [to be] weighed." *Id.* at 530.

In reviewing the trial court's ruling on a speedy trial claim, "we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components." *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). "Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but '[t]he balancing test as a whole . . . is a purely legal question.'" *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008) (quoting *Zamorano*, 84 S.W.3d at 648 n.19). Under the standard we are to apply, we defer not only to the trial judge's resolution of disputed facts, but also to the judge's right to draw reasonable inferences from those facts. *Id.* "In assessing the evidence at a speedy-trial hearing, the trial judge may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted." *Id.* The trial judge is allowed to disbelieve any evidence so long as there is a reasonable and articulable basis for doing so. *Id.* "And

all of the evidence must be viewed in the light most favorable to [the trial judge's] ultimate ruling."

*Id.*

## A. Length of Delay

The length of delay is a "triggering mechanism" for analysis of the remaining *Barker* factors, *Barker*, 407 U.S. at 530, and is measured from the date the defendant is arrested or formally accused. *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992). If the accused is able to show a presumptively prejudicial delay, we must then consider the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. *Zamorano*, 84 S.W.3d at 649. Texas courts have generally held a delay of eight months or more is "presumptively prejudicial" and will trigger a speedy trial analysis. *Zamorano*, 84 S.W.3d at 649 n.26 (citing *Harris*, 827 S.W.2d at 956)

Centeno was arrested on April 25, 2008, and his trial commenced on April 14, 2009. Accordingly, the delay is sufficient to trigger a speedy trial analysis. *Id*.

## B. Reason for the Delay

Once it is determined that a presumptively prejudicial delay has occurred, the State bears the burden of justifying the delay. *State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.—San Antonio 1998, no pet.). Intentional prosecutorial delay is weighed heavily against the State, while more "neutral" reasons, such as negligence or overcrowded dockets, are weighed less heavily against it. *Zamorano*, 84 S.W.3d at 649; *Rangel*, 980 S.W.2d at 843-44. "In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). A valid reason serves to justify an appropriate delay. *Id.*

As previously noted, Centeno was arrested on April 25, 2008. On June 19, 2008, Centeno failed to appear for a pre-trial hearing, and a capias was issued for his arrest. After posting a new bond, Centeno requested two months to hire an attorney. Although the case had several re-sets, the record reflects that only one re-set from February 17, 2009, to March 27, 2009, was based on a request by the State for a continuance. The record does not, however, reflect a reason for the re-sets from August of 2008 to February of 2009, a period of five months. Because nothing in the record indicates the reason for the delay and the State has failed to offer any justification, this factor is weighed against the State, since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. *See Marquez v. State*, 165 S.W.3d 741, 748 (Tex. App.—San Antonio 2005, pet. ref'd). However, because there is no evidence that the State deliberately attempted to delay the trial, this factor is not weighed heavily against the State. *Id*.

## C. Assertion of the Right

The third factor requires a determination of whether the defendant asserted his right to a speedy trial. *Munoz v. State*, 991 S.W.2d 818, 825 (Tex. Crim. App. 1999). The defendant's assertion of that right is entitled to strong evidentiary weight when determining whether the defendant was deprived of his right to a speedy trial. *Barker*, 407 U.S. at 531-32. "Although a motion to dismiss notifies the State and the court of the speedy trial claim, a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his" speedy trial claim. *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983). A defendant's "lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial." *Harris*, 827 S.W.2d at 957.

Although Centeno's attorney asserted that he had requested a speedy trial at each setting, the record only contains evidence that Centeno filed a motion requesting a dismissal on the basis of speedy trial on the day trial commenced. Centeno's speedy trial claim is attenuated by the fact that he sought dismissal rather than a speedy trial. *Phillips*, 650 S.W.2d at 401. In view of Centeno's delay in asserting his speedy trial right and his request for a dismissal, this factor weighs against Centeno.

### D. Prejudice

The final *Barker* factor is prejudice to the defendant, which is assessed in the light of the interests that the speedy trial right is designed to protect. *Munoz*, 991 S.W.2d at 826. These interests are: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Id.* "Of these subfactors of the last *Barker* factor, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Id.* (quoting *Barker*, 407 U.S. at 532-33). The defendant has the burden to make some showing of prejudice, although a showing of actual prejudice is not required. *Id.* When the defendant makes a prima facie showing of prejudice, the burden shifts to the State to show the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Id.* (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)).

There is no showing of prejudice in the record. Centeno was not incarcerated while he was awaiting trial; therefore, he endured no oppressive pretrial incarceration. Although Centeno's attorney stated that Centeno suffered substantial anxiety and concern, the record is devoid of evidence as to any anxiety or concern Centeno may have had. Finally, the record contains no

evidence suggesting Centeno's case was impaired or hampered by the delay. Therefore, the fourth *Barker* factor weighs against Centeno.

## E. Balancing of the Four *Barker* Factors

Although the twelve-month delay in this case triggered a speedy trial analysis, approximately three months of the delay is directly attributable to Centeno. Moreover, the record reflects that Centeno did not assert his right to a speedy trial until the day trial commenced and then sought a dismissal. Finally, the record contains no evidence that Centeno was prejudiced by the delay. Having reviewed the four factors, we conclude the trial court did not err in denying Centeno's motion to dismiss.

## POST-ARREST SILENCE

In his second issue, Centeno asserts that the trial court erred in not *sua sponte* declaring a mistrial when the State elicited testimony regarding Centeno's post-arrest silence. Centeno voiced no objection to the State's questioning at trial, and the use of post-arrest silence is not fundamental error. *See Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986). Accordingly, we reject Centeno's argument that the trial court had a *sua sponte* duty to take action. By failing to object, Centeno failed to preserve this error for our review. *See id.*; *see also Maes v. State*, 275 S.W.3d 68, 72 (Tex. App.—San Antonio 2008, no pet.).

In his third issue, Centeno contends the trial court erred in overruling his objection to the State's closing argument commenting on his post-arrest silence. During closing argument, however, Centeno's attorney objected as follows: "Your Honor, we'd object. This is an *Edwards* violation. We've been very patient. He was under arrest." An *Edwards* violation occurs when police conduct a custodial interrogation of a suspect who has requested the assistance of counsel. *See Martinez v.*

*State*, 275 S.W.3d 29, 34 (Tex. App.—San Antonio 2008), *pet. stricken*, 2009 WL 82362 (Tex. Crim. App. 2009). Accordingly, because Centeno's objection at trial does not comport with his objection on appeal, he has not preserved his third complaint for our review. *See Wheatfall v. State*, 882 S.W.2d 829, 836 (Tex. Crim. App. 1994).

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH