

# NUMBER 13-11-00694-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

WILLIAM SMITH A/K/A
BILL SMITH,                                                    Appellant,

v.

THE STATE OF TEXAS,                                           Appellee.

### On appeal from the 94th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant William Smith a/k/a Bill Smith appeals his conviction for driving while

intoxicated—third offense,[1] a third-degree felony enhanced to a habitual felony offender.

*See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2) (West Supp. 2011). The trial court

---

[1] Appellant was previously convicted of two offenses relating to the operation of a motor vehicle while intoxicated:  (1) On March 10, 2006, in Cause No. 63519, in the County Court at Law of San Patricio County, Texas; and (2) On March 28, 2008 in Cause No. 2007-9764-3 in the County Court at Law No. 3 of Nueces County, Texas.

found appellant guilty and, on finding two prior felony conviction enhancements to be true,[2] assessed punishment at twenty-five years imprisonment. *See id.* § 12.42(d). By four issues, appellant complains the trial court erred by: (1) refusing to appoint a new attorney on the day of trial; (2) admitting blood sample evidence; (3) allowing fingerprint expert testimony and admitting prior judgments authenticated thereby; and (4) finding that the evidence was sufficient to show two prior felony convictions. We affirm.

## I. BACKGROUND[3]

State trooper David Anguiano stopped appellant's vehicle because appellant was driving without wearing a seat belt. Upon approaching appellant's vehicle, Officer Anguiano "smelled the strong odor of some sort of alcoholic beverage coming from him" and saw "alcohol containers spread out throughout the vehicle." Officer Anguiano observed that appellant's movements were slow and that he had glassy, blood-shot eyes. Officer Anguiano administered five field sobriety tests; appellant failed three of them. Officer Anguiano arrested appellant for driving while intoxicated.

Officer Anguiano testified that appellant made "a statement to the fact that it was a felony D.W.I. for him." Officer Anguiano "ran [appellant's] information" with his in-car computer and verified appellant's criminal history with the communications operator. Upon learning appellant had two previous D.W.I. convictions, Officer Anguiano believed he was authorized by law to obtain a mandatory blood draw. Appellant did not give his

---

[2] Appellant was also previously convicted of two felony offenses for burglary of a habitation: (1) On June 7, 1989, in Cause No. 88-CR-1586-A, in the 28th District Court of Nueces County, Texas; and (2) On February 19, 1992, in Cause No. 2870-1, in the 156th District Court of Live Oak County, Texas.

[3] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4. We have reordered appellant's issues on appeal for clarity.

consent, and no warrant was obtained. The blood draw was taken about one hour after appellant was stopped.

Anna Marie Quintanilla testified that she worked as a medical technologist at Northwest Regional Hospital and that part of her duties include collecting blood and testing specimens. She stated that she is a licensed medical technologist with twenty years of experience, and that she is qualified to draw blood specimens. She explained the standard procedures. She testified that she collected appellant's blood sample and that the blood sample was taken using reliable hospital procedures recognized by the scientific community and as required by State regulations.

Emily Bonvino, a Department of Public Safety forensic scientist, testified regarding the blood test results. Appellant's blood sample contained .21 grams of alcohol per 100 milliliters of blood.

## II. FAILURE TO APPOINT NEW TRIAL COUNSEL

By his fourth issue, appellant contends the trial court erred "by forcing appellant to trial with appointed counsel to whom appellant objected." Appellant's issue inquires whether appointed counsel had a duty to timely relay appellant's request for new counsel to the court and whether appellant is entitled to rely on appointed counsel in discharging his duties. Appellant, however, does not cite any authority that supports his argument for reversal based upon defense counsel's alleged duty to notify the trial court concerning appellant's desire for the appointment of other counsel.

We review a trial court's ruling on a motion for withdrawal and replacement of appointed counsel under an abuse of discretion standard. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000) (en banc). As expressed in *King*:

3

> [T]he right to counsel may not be manipulated so as to obstruct the judicial process or interfere with the administration of justice. Further, personality conflicts and disagreements concerning trial strategy are typically not valid grounds for withdrawal. A trial court has no duty to search for counsel agreeable to the defendant.

*Id.* (citations omitted).

Once a trial court appoints an attorney to represent an indigent defendant, the defendant has been accorded the protections provided under the Sixth and Fourteenth Amendments to the United States Constitution and Article 26.04 of the Texas Code of Criminal Procedure, and the defendant then carries the burden of proving entitlement to a change of counsel. *See* U.S. CONST. amend. VI, XIV; TEX. CODE CRIM. PROC. ANN. art. 26.04 (West 2011); *Barnett v. State*, 344 S.W.3d 6, 24 (Tex. App.—Texarkana 2011, pet. ref'd) (citing *Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976)); *see also Hill v. State*, 686 S.W.2d 184, 187 (Tex. Crim. App. 1985); *Watkins v. State*, 333 S.W.3d 771, 775 (Tex. App.—Waco 2010, pet. ref'd); *Maes v. State*, 275 S.W.3d 68, 71 (Tex. App.—San Antonio 2008, no pet.) (noting that defendant is responsible for "making the trial court aware of his dissatisfaction with counsel, stating his grounds for his dissatisfaction, and offering evidence in support of his complaint"). A defendant may not wait until the day of trial to demand different counsel or to request counsel be dismissed so he may retain other counsel. *Webb*, 533 S.W.2d at 784; *Gilmore v. State*, 323 S.W.3d 250, 264 (Tex. App.—Texarkana 2010, pet. ref'd).

During a break in the State's first witness's testimony, appellant informed the trial court that "everything has happened so fast lately, and I really—I didn't feel that I was being represented in the way that I need to be." Appellant stated he was present under duress because he was not being represented in the manner he preferred and that his

4

attorney refused to "relieve himself" despite appellant's persistent requests. The record is otherwise silent in that regard. The trial court denied appellant's motion to dismiss his attorney and to appoint a new one, noting that the case was "seven months old" and that appellant had never written the trial court or in any other manner communicated his alleged duress prior to that moment.

We hold that appellant's conclusory and untimely claim that his attorney was not satisfactorily representing him did not show appellant was entitled to a change of counsel. *See Hill*, 686 S.W.2d at 187; *Watkins*, 333 S.W.3d at 775; *Maes*, 275 S.W.3d at 71. The trial court did not abuse its discretion by denying his day-of-trial request. *See Webb*, 533 S.W.2d at 784; *Gilmore*, 323 S.W.3d at 264. We overrule appellant's fourth issue.

### III. BLOOD SAMPLE EVIDENCE

By his first issue, appellant argues the trial court erred by admitting a blood sample that was allegedly taken in violation of the Fourth Amendment of the United States Constitution and section 724 of the Texas Transportation Code. *See* U.S. CONST. amend. IV; TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (West 2011).

### A.     Constitutionality of Blood Draw

Appellant argues that the United States Supreme Court's recent holding in *Missouri v. McNeely*, which was decided while this appeal was pending,[4] invalidates his blood draw because "the State did not meet its burden of demonstrating an exigent circumstance existed . . . ." *See* 133 S.Ct. 1552, 1567–68 (2013). Appellant asserts the trial court erred by admitting the blood draw evidence because the warrantless seizure of

---

[4] After the United States Supreme Court's holding in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), we granted appellant's requested leave to amend or supplement his brief to include the issue of whether the blood seizure violated the Fourth Amendment, which appellant did not argue in his original brief.

a person's blood is not permitted under the Fourth Amendment to the United States Constitution without a showing of exigent circumstances. *See id.*; U.S. CONST. amend. IV. The State claims appellant failed to preserve this issue for review on appeal. We agree with the State.

Preservation of error is a prerequisite to presenting a claim on appeal. *See* TEX. R. APP. P. 33.1(a). Even constitutional errors can be waived by the failure to preserve them. *See Trevino v. State*, 174 S.W.3d 925, 927 (Tex. App.—Corpus Christi 2005, pet. ref'd) (citing *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986)). To preserve error, an appellant must timely object, specify the grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a); *see Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000) (en banc). The trial court's "ruling must be conclusory; that is it must be clear from the record the trial judge in fact overruled the defendant's objection or otherwise error is waived." *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991) (en banc) (citing *Bailey v. State*, 532 S.W.2d 316, 322 (Tex. Crim. App. 1975)); *see Ochoa v. State*, 119 S.W.3d 825, 828 (Tex. App.—San Antonio 2003, no pet.); *see also Hernandez v. State*, No. 13-11-00230-CR, 2012 WL 1255202, at *9 (Tex. App.—Corpus Christi Apr. 12, 2012, no pet.) (mem. op., not designated for publication).

A trial court's ruling on an objection may be implicit rather than explicit. *See* TEX. R. APP. P. 33.1(a)(2)(A). A trial court implicitly rules on an objection when "its actions or other statements otherwise unquestionably indicate a ruling." *Rey v. State*, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995) (citing *Moody v. State*, 827 S.W.2d 875 (Tex. Crim. App. 1992)); *see Montanez v. State*, 195 S.W.3d 101, 104 (Tex. Crim. App. 2006); *Dahlem v. State,* 322 S.W.3d 685, 691 (Tex. App.—Fort Worth 2010, pet. ref'd).

6

Appellant did not move to suppress the blood sample evidence before trial, but objected to its admission during trial on the grounds that, *inter alia*, section 724.012 of the Texas Transportation Code, under which appellant's blood was seized, was unconstitutional.[5] The trial court did not rule on appellant's constitutionality objection, but carried the issue. The State subsequently again moved to admit the blood sample evidence, and appellant again generally objected on constitutional grounds. The trial court thereafter admitted the blood sample evidence but reserved the constitutional issue, assuring appellant's counsel he would have an opportunity to brief the issue. After the State rested, appellant moved for a directed verdict and again argued, among other things, that the blood seizure violated appellant's "Constitutional right of due process in particular." Appellant did not assert a search and seizure argument, U.S. CONST. IV, in his motion for directed verdict. The trial court denied appellant's motion.

After ruling on appellant's directed verdict and finding appellant guilty, the trial court revisited appellant's constitutional challenge, and told defense counsel, "[Y]ou're going to have to brief me on the issue if you want me to—" "—consider it. I need to know what the courts have said and how far it's gone up." On September 29, 2011, the trial court convicted and sentenced appellant in open court. On October 4, 2011, the written judgment was signed. In a correspondence dated October 6, 2011, but file-stamped October 18, 2011, defense counsel delivered a letter to the trial court, which solely states: "Enclosed are some cases regarding the issue of obtaining a blood draw without a

---

[5] Appellant's counsel framed the constitutional challenge as a due process argument, but the trial court considered it a Fourth Amendment issue and asked appellant, "[Y]ou're making, I guess, a Fourth Amendment search and seizure—" "—constitutional challenge." Defense counsel affirmed that he was, but again articulated it as a due process challenge in his motion for directed verdict.

warrant[.]"[6]  No discussion or request was made in the correspondence, and no further hearings were held before the trial court in that regard.

Appellant admits in his brief on appeal that "there was no express ruling on the objection. . . ." The record confirms this admission that the trial court did not ever expressly rule on appellant's Fourth Amendment challenge. Rather, that challenge was expressly carried, pending the receipt of argument and legal authority. In addition, appellant's Fourth Amendment challenge on appeal does not comport with his due process objection in his motion for directed verdict. *See, e.g., Lawson v. State*, 283 S.W.3d 438, 443 (Tex. App.—Fort Worth 2009, pet. ref'd) (holding appellant failed to preserve constitutional argument presented on appeal that did not comport with the constitutional argument advance at trial).

Finally, the trial court did not implicitly overrule appellant's objection because neither its actions nor statements unquestionably indicated a ruling. *See Rey*, 897 S.W.2d at 336; *Montanez*, 195 S.W.3d at 104; *Dahlem*, 322 S.W.3d at 691. The trial court admitted the contested exhibit, but then encouraged defense counsel to research and brief the constitutionality challenge. The trial court was open to considering appellant's issue, subject to receiving persuasive authority. Appellant, however, failed to timely provide any authority until two days after the written judgment was signed, and the record does not show that the trial court considered it or otherwise ruled on it.[7]

---

[6] Appellant provided the following citations as his authority: TEX. CRIM. PROC CODE ANN. art. 1801; *Illinois v. Gates*, 462 U.S. 213 (1983); *Flores v. Texas*, 319 S.W.3d 697 (Tex. Crim. App. 2010); *Beeman v. Texas*, 86 S.W.3d 613 (Tex. Crim. App. 2002) (en banc); *Farhat v. State*, 337 S.W.3d 302 (Tex. App.—Fort Worth 2011, pet. ref'd).

[7] Appellant expressly states in his brief on appeal that "Trooper Anguiano testified to sufficient facts that would support a determination that he had probable cause to believe appellant committed the offense

Accordingly, because appellant failed to timely pursue his objection to an adverse ruling, this issue is not preserved for review. *See* T̂ex. R. App. P. 33.1. We overrule appellant's first issue.

## B. Compliance With Blood Draw Statute

Appellant contends the trial court erred by admitting the blood sample evidence because the sample was allegedly not taken by a qualified technician as required by the Texas Transportation Code. *See* Tex. Transp. Code Ann. § 724.017 (West 2011).[8] As with the previous issue, this issue is unpreserved. *See* Tex. R. App. P. 33.1. Quintanilla, the medical technologist who collected appellant's blood sample, testified, without objection, regarding her qualifications and the collection of appellant's blood.[9] Appellant thus failed to preserve his issue for review on appeal by failing to object to Quintanilla's qualifications at trial.[10] *See* Tex. R. App. P. 33.1. Even if we were to consider this issue, however, the Texas Court of Criminal Appeals recently affirmed that a medical technologist such as a phlebotomist is a technician who draws blood. *See*

---

of DWI." *See Schmerber v. California*, 384 U.S. 757, 772 (1966).

[8] "Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen . . . ." Tex. Transp. Code Ann. § 724.017(a) (West 2011). "'[Q]ualified technician' does not include emergency services personnel." *Id.* § 724.017(c).

[9] The day before Quintanilla testified, appellant objected to the admission of the sample because, in part, "There's no evidence that a qualified technician drew this blood." The State responded that Quintanilla was going to testify the next day, and the court carried the objection. The court later admitted the specimen, and overruled appellant's repeated objection to the extent that appellant argued "the phlebotomist or whoever drew this blood is not at this time here to testify . . . ." These objections focused on the absence of testimony and not Quintanilla's personal qualifications, which appellant now challenges.

[10] Appellant did later challenge Quintanilla's qualifications in his directed verdict and closing argument but only on the grounds that Quintanilla did not satisfy the standards for an expert witness established by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In addition to being untimely, this contention does not comport with the issue on appeal—that Quintanilla did not qualify under the Texas Transportation Code. *See Heidelberg v. State,* 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) ("The legal basis of a complaint raised on appeal cannot vary from that raised at trial.").

9

*Krause v. State*, No. PD-0819-12, 2013 WL 1890731, at *3 (Tex. Crim. App. May 8, 2013); *see also State v. Bingham*, 921 S.W.2d 494, 496 (Tex. Crim. App. 1996); *Torres v. State*, 109 S.W.3d 602, 606 (Tex. App.—Fort Worth 2003, no pet.); *Cavazos v. State*, 969 S.W.2d 454, 456 (Tex. App.—Corpus Christi 1998, pet. ref'd). We overrule appellant's first issue.

## IV. ADMISSIBILITY OF EXPERT OPINION

By his second issue, appellant argues the trial court erred by allowing the fingerprint expert's testimony and admitting prior judgments into evidence based thereon. Specifically, appellant asserts that an expert in fingerprint identification must testify (1) regarding his particular techniques and their acceptance in the community to establish reliability; and (2) regarding specific matching markings he finds to identify fingerprints rather than summarily state he found matching characteristics. Appellant specifically complains the trial court erred by: (1) overruling appellant's objection to and allowing the fingerprint expert's testimony during the guilt-innocence phase of trial; and (2) admitting two prior judgments, which the fingerprint expert linked to appellant by comparing the prints on the two prior judgments to appellant's fingerprints, during the sentencing phase.

The admission of expert testimony is reviewed on appeal for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010) (citing *Lagrone v. State*, 942 S.W.2d 602, 616 (Tex. Crim. App. 1997)). The proponent of scientific evidence must persuade the trial court through clear and convincing evidence that the proposed evidence is reliable by establishing: (1) the underlying scientific theory is valid; (2) the technique applying the theory is valid; and (3) the technique was properly applied on the occasion in question. *Somers v. State*, 368 S.W.3d 528, 536 (Tex. Crim. App.

10

2012); *Kelley v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992); *see also Russeau v. State*, 171 S.W.3d 871, 883 (Tex. Crim. App. 2005) (stating that fingerprint comparison theory is reliable and admissible). On appeal, appellant does not challenge the first element, but asserts "there is no evidence from which the trial court could determine the technique or methodology applying the theory was valid or the technique was properly applied in this case." Appellant, however, did not raise these concerns in the trial court.

During the guilt-innocence phase, appellant objected to the expert's testimony on the grounds that "I don't believe that the expert's opinion is rationally based upon human perception . . . ." During the sentencing phase, appellant objected to the admission of the two prior judgments because "the [expert's] testimony wasn't specific enough regarding the comparison points, plus there's no written reports." Neither objection comports with appellant's argument on appeal. Appellant's issues therefore have not been preserved for review on appeal. *See* TEX. R. APP. P. 33.1; *Heidelberg v. State,* 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) ("The legal basis of a complaint raised on appeal cannot vary from that raised at trial."). Even if we were to consider such arguments, however, we do not find the trial court abused its discretion. The record reflects that Deputy Flores established the reliability of his techniques and comparisons and that he sufficiently testified concerning the commonality of features and physical characteristics he found in his fingerprint comparisons. We overrule appellant's second issue.

## V. SUFFICIENCY OF EVIDENCE TO PROVE PRIOR FELONIES

By his third issue, appellant argues the evidence is insufficient to show that he committed the two prior felonies alleged in the indictment.

11

We review the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the enhancement paragraphs to be true beyond a reasonable doubt. *Jaynes v. State*, 216 S.W.3d 839, 845 (Tex. App.—Corpus Christi 2006, no pet.); *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Jaynes*, 216 S.W.3d at 845 (citing *Westbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000)). We give deference to the factfinder's decisions about the weight and credibility of the evidence. *Id.* Although appellant contests the admissibility of some of the evidence, we must consider all the evidence in conducting our review. *Id.*

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). No specific document or mode of proof is required to prove these two elements. *Id.* A certified copy of a final judgment and sentence is one method of proving them. *See id.* The factfinder "fits the pieces of the jigsaw puzzle together and weighs the credibility of each piece," looking to the totality of the evidence to determine whether both elements are proven beyond a reasonable doubt. *See id.* at 923.

The State alleged in the indictment that appellant had two prior convictions: (1) "Burglary of a Habitation, on June 7, 1989, in Cause No. 88-CR-1586-A," from the 28th District Court of Nueces County; and (2) "Burglary of a Habitation, on February 19, 1992, in Cause No. 2870-1" from the 156th District Court of Live Oak County, Texas. During

the sentencing phase, the trial court admitted State's Exhibit Numbers 3, 5, and 6. State's Exhibit 3 was a fingerprint card with appellant's prints that Fred Flores, a Nueces County deputy sheriff and fingerprint identification expert, took from appellant. State's Exhibits 5 and 6 were the earlier judgments' "pen packs."

State's Exhibit 5 contained a certified copy of a felony conviction and sentence for burglary of a habitation in cause number 2870-1, rendered by the 156th District Court of Live Oak County, Texas on February 19, 1992. The defendant's name on the judgment is "William Perry Smith," and the exhibit included pictures of the defendant and fingerprints. State's Exhibit 6 contained certified copies of two judgments, including a felony conviction and a sentence for burglary of a habitation in cause number 88-CR-1586-A, rendered by the 28th District Court of Nueces County, Texas on June 7, 1989. The defendant in the judgment is "William Smith," and the exhibit included the defendant's picture and fingerprints. Flores testified that "[a]fter comparing the known fingerprints of the Defendant William Bill Smith [appellant] to the pen packets in Exhibits 6 and 5, it was determined based on . . . that comparison, that they're one in the same individual, William Bill Smith."

Texas law has long recognized that matching an accused's fingerprints to a set of fingerprints in a "pen packet" is sufficient to prove that the accused is the person convicted in the prior conviction. *See Littles v. State*, 726 S.W.2d 26, 32 (Tex. Crim. App. 1984) (en banc); *Cole v. State*, 484 S.W.2d 779, 784 (Tex. Crim. App. 1972); *Allen v. State*, 451 S.W.2d 484, 484 (Tex. Crim. App. 1970); *Williams v. State*, 356 S.W.3d 508, 517 (Tex. App.—Texarkana 2011, pet. ref'd); *Cleveland v. State*, 814 S.W.2d 140, 142 (Tex. App.—Houston [14th Dist.] 1991, no pet.); *Lancaster v. State*, 734 S.W.2d 161, 165

(Tex. App.—Fort Worth 1987, pet. ref'd). Additionally, allowing the factfinder to compare photographs included in pen packets with the defendant can alone be sufficient to prove the defendant is the same person as the one in the photograph. *Forward v. State*, No. 11-11-00060-CR, 2013 WL 1248287, at *4 (Tex. App.—Eastland Mar. 28, 2013, no pet.) (citing *Littles*, 726 S.W.2d at 31–32).

After viewing the evidence in the light most favorable to the prosecution, we hold that a rational factfinder could have found that two prior convictions existed and that appellant was the person convicted. *See Jaynes*, 216 S.W.3d at 845. We overrule appellant's third issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of July, 2013.

14